# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0323

═══════════

JOHN A. LANCE, DEBRA L. LANCE, F.D. FRANKS, AND HELEN FRANKS, PETITIONERS,

v.

JUDITH AND TERRY ROBINSON, GARY AND BRENDA FEST, VIRGINIA GRAY, BUTCH TOWNSEND AND BEXAR-MEDINA-ATASCOSA COUNTIES WATER CONTROL AND IMPROVEMENT DISTRICT NO. 1., RESPONDENTS

═══════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

═══════════

**Argued November 7, 2017**

JUSTICE BOYD delivered the opinion of the Court.

JUSTICE BLACKLOCK did not participate in the decision.

> So stupendous is the conception, so vast the scale of actual accomplishment in the construction of the Medina Dam Project that thousands of its nearest neighbors have positively no conception of the immensity of this undertaking. Yet, by a strange twist of Fate's perversity, this everlasting monument to man's mastery over the greatest forces of nature has achieved a deserved fame in the four corners of the earth, until not only the kings of finance, but royalty itself has leaned forward from its gilded throne and hearkened to the resistless lure of this giant among enterprises.[1]

---

[1] 1920s sightseeing brochure touting a "lovely scenic ride" to Medina Dam, http://www.edwardsaquifer.net/medina.html (last visited March 23, 2018).

One hundred years ago, the Medina Valley Irrigation Company (MVICO) embarked on an ambitious plan to create a functional oasis in the Texas Hill Country. The project, which included the Medina Dam, the Diversion Dam a few miles downstream, and a twenty-six-mile canal system, was an engineering marvel at the time. When MVICO completed the Medina Dam in 1912, it became the largest dam in the state and the fourth largest in the country. By the time the lake first reached its capacity in 1919, the 254,000 acre-feet of water creating 100 miles of live-oaked shoreline had become a popular destination. In addition to the scenic views and recreational opportunities in the Box Canyon west of San Antonio, the project has provided agricultural irrigation, prevented flooding, supplied drinking water, and offered a peaceful place to live or enjoy a weekend home.[2]

But the project has faced its challenges as well. Seventy men died while constructing the dam. The investors and operators endured financial defaults and receiverships. Droughts and the canyon's porous limestone have repeatedly left docks stranded on a lake bed dry enough for cattle grazing. Floods and aging have required expensive re-stabilization efforts. And disputes over ownership and easement rights in the land surrounding the lake have resulted in repeated and protracted litigation.

In this case, three families who own lots on a peninsula at Medina Lake filed suit after their new neighbors denied them access to an open-space area the community has long considered public space for recreation and access to the lake. The new neighbors claim they own the open-

---

[2] *See Medina Lake*, TEXAS STATE HISTORICAL ASSOCIATION, https://tshaonline.org/handbook/online/articles/rom09 (last visited March 23, 2018); Zeke MacCormack, *100 Years Later, Medina Dam Still a Marvel*, SAN ANTONIO EXPRESS & NEWS, (Aug. 20, 2012), http://www.mysanantonio.com/news/local_news/article/100-years-later-dam-still-a-marvel-3799952.php; Rob McCorkle, *Medina Dam at 100*, TEXAS HIGHWAYS (June 2012), http://www.texashighways.com/blog/item/4544-speaking-of-texas-medina-dam-at-100.

space area and that the community members have no easements or other rights to use it. The plaintiffs contend that a local water district owns the land, and alternatively, that they have an easement right to use it regardless of who owns it. The trial court and court of appeals agreed with the plaintiffs. We affirm in part and reverse in part and remand the case to the trial court.

## I.
## Background

To develop the Medina Dam Project, MVICO had to acquire property rights from those whose lands would be flooded to create the lake. MVICO acquired those rights in various forms from numerous different landowners, including Theresa Spettle and her three daughters. In January 1917, the Spettles conveyed slightly over 1,500 acres to MVICO. The deed for this conveyance (the Spettle Deed) describes eighteen separate tracts by referring to each tract's acreage amounts, prior surveys, and metes and bounds. For example, the deed describes the tract that included the land at issue in this case as "104.5 acres, more or less, off the West end of Survey No. 231-Adams, Beaty, & Moulton, Medina[3] County, Texas, more particularly described by metes and bounds as follows: Commencing at point "0 1", thence . . . ," followed by numerous calls describing specific distances in particular directions, until finally "to place of beginning."

The Spettle Deed provides that the lands conveyed to MVICO were to "be used forever as a reservoir for storing water above" the Medina Dam, "for use in the maintenance and operation of the Irrigation System." It expressly gives MVICO the right to "submerge" the property

---

[3] The tract is actually located in Bandera County. The defendants' expert opined that the mistaken reference to Medina County renders the deed ambiguous. But the trial court refused to consider his report because it was filed after the deadline for summary-judgment evidence, in support of the Petitioners' motion for rehearing. Although the Petitioners cite to this evidence in their appellate briefing, they do not complain of the trial court's refusal to consider it. They have also never relied on that portion of the expert's report for any argument made in this Court or the courts below.

conveyed "by backing water from its dam over said lands." It also reserves for the Spettles rights to "use" the waters and to construct improvements "upon the edges of the reservoir," specifically:

(1) The right to use the waters in the reservoir for domestic purposes;
(2) The right to use the waters in the reservoir for bathing, boating, fishing and hunting; and,
(3) The right to construct upon the edges of the reservoir at their own peril and expense and without any liability of the grantors [sic] for the destruction thereof by water or otherwise, such improvements as may be necessary and incident to the exercise of the privileges above reserved by the grantors, their heirs and assigns, which privileges are to be exercised by said parties only to the extent and in proportion which the acreage above described bears to the total acreage under the flow line of said reservoir.

About six months after executing the Spettle Deed, Theresa and her daughters executed another deed through which they partitioned among themselves about 4,000 acres of their remaining land in Bandera and Medina counties, which until then they held jointly in common. In this Partition Deed, each of the Spettles agreed, on behalf of themselves "and their heirs and assigns," that Theresa would own certain tracts totaling 928 acres, her daughter Mathilda Spettle Redus would own tracts totaling 728 acres, and Mathilda's two sisters would jointly own the remaining acres. The Partition Deed describes each of the tracts by referring to acreage amounts, previous surveys, and boundaries based on points, directions, distances, and various natural markers. The Deed partitions the respective lands to each of the Spettles "TO HAVE AND TO HOLD . . . with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise incident or appertaining . . . as her separate estate, her heirs and assigns . . . in fee simple and forever."

As mentioned, the Spettle Deed grants MVICO the right to "submerge" the land it acquired from the Spettles "by *backing water* from its dam over said lands," and it permits the Spettles to exercise their reserved rights and privileges "only to the extent and in proportion which the acreage

4

above described bears to the total acreage under the *flow line* of said reservoir." Apparently alluding to those references, the Partition Deed refers to "the backwater or flow line" as one of the natural markers used to describe the partitioned tracts' boundaries. For example, the deed describes the lands partitioned to Mathilda as including "197 acres of Survey No. 231 in name of Adams, Beaty & Moulton," described "more particularly" by metes and bounds beginning at a "stake set on [MVICO]'s backwater or flow line," returning a few times to points along the "backwater or flow line," continuing at one point "along with the meanders of said backwater or flow line, as surveyed for [MVICO]," and finally returning to "the place of beginning."

The land at issue in this case is on a narrow peninsula at Medina Lake known as Redus Point, which was originally part of the 728 acres partitioned to Mathilda Spettle Redus. Respondents Judith and Terry Robinson, Gary and Brenda Fest, and Virginia Gray (collectively, the Robinsons) own Lots 1, 2, and 3, respectively, in the Redus Point Addition Subdivision. The peninsula generally runs from north to south, and the lots sit along the western edge, atop an incline or "cliff" as high as fifty feet above the water when the lake is full. Although it is possible to access the water below the cliff from these lots, the steep, rocky incline makes it difficult and, at least to some degree, unsafe. Because of this, the Robinsons and other Redus Point lot owners have regularly accessed the water along the peninsula's gently sloping eastern side, usually using an open space east of Fauries Road, which runs from north to south along the peninsula. Since at least the 1970s, the Robinsons and other lot owners have constructed improvements in this open space, including walkways, a dock, a boat ramp, and a deck. Although the open space has long been surrounded by a low post-and-cable fence, the community members have freely used the open space as a place for recreation and easy access to the water.

The Robinsons claim that their joint rights to use and improve the open space derives from the Spettle Deed, in which the Spettles reserved to themselves and "their heirs and assigns" the right to "use the waters in the reservoir" for domestic and recreational purposes and to "construct upon the edges the reservoir . . . such improvements as may be necessary and incident to the exercise of [those] privileges." They contend that Theresa Spettle and her three daughters, including Mathilda, each retained these rights in the Partition Deed as "hereditaments and appurtenances . . . belonging, or in anywise incident or appertaining" to their partitioned lands. More specifically, the Robinsons contend that the Spettle Deed granted MVICO fee-simple ownership in all of the land up to a point that is even with the height of the top of Medina Dam, which the parties refer to as Elevation 1084. The Robinsons assert that the Spettle Deed's reference to MVICO's right to use the land for "backing water" to a "flow line" refers to Elevation 1084, which—they say—constitutes the boundary between the land MVICO acquired and the land the Spettles retained.

When the lake is full, however—as opposed to either low or flooded—the water reaches only up to a point that is even with the top of a spillway that is adjacent to and twelve feet below the top of the dam. The parties refer to this point as Elevation 1072. Because of the spillway, the lake reaches only to a meandering line at Elevation 1072, leaving a dry area around the lake between Elevation 1072 and Elevation 1084. Because the difference consists of altitudinal feet, the twelve-foot span covers only a short distance on the cliffs on the west side of the peninsula but extends a much longer distance on the gently sloping eastern side. The Robinsons argue that this dry area between Elevation 1084 and Elevation 1072—often referred to as the "contour zone"— was acquired by MVICO in the Spettle Deed and now belongs to MVICO's successor-in-interest,

6

the Bandera-Medina-Atascosa Counties Water Improvement District No. 1 (the Water District). According to the Robinsons, "the backwater or flow line" in the Partition Deed refers to Elevation 1084, and the contour zone between that line and Elevation 1072 constitutes the "edges of the reservoir" and the "acreage under the flow line" upon which the Spettles reserved the right to construct improvements necessary to exercise their right to use the water for domestic and recreational purposes. The open space where the Robinsons and other Redus Point residents have gathered and constructed improvements lies within this contour zone. The residents appear to have shared the view that they, as Mathilda Spettle Redus's "assigns," jointly hold the right to enjoy and construct improvements within the contour zone, at least around the Redus Point peninsula.

In October 2011, however, John and Debra Lance purchased Lot 8 on Redus Point, which sits across Fauries Road from the open-space area. Within a few months, the Lances began replacing the old post-and-cable fence with a new three-rail fence and posting "No Trespassing" signs. In April 2012, the Lances sent a letter to Judith Robinson, notifying her that they intended to construct a fence "on our property" and asking her to remove the wood deck from "our property." When the Robinsons challenged the Lances' claim to the open space, the Lances produced two deeds they received from Lot 8's prior owners, F.D. and Helen Franks.

The first deed—a Warranty Deed—describes the "Property" conveyed as "Lot 8, of Redus Point Addition," as identified in the plat filed for the Redus Point subdivision. The deed conveys title to Lot 8, "together with all and singular the rights and appurtenances thereto in any wise belonging," and expressly excepts any "portion of the Property lying or being situated below the 1084' Contour Line of Medina Lake, Bandera County, Texas." But it then conveys "any portion

7

of the Property lying or being situated below the 1084' Contour Line . . . without express or implied warranty" or any common-law or statutory warranties.

In the second deed—entitled Deed Without Warranty—the Franks conveyed title to the open-space area, defined as "a 0.282 acre tract of land, more or less, out of the Adams, Beaty and Moulton Survey No. 231, Abstract No. 18, in Bandera County, Texas." Exhibit A to this Deed Without Warranty further describes the property conveyed as "being on Medina Lake adjacent to Lot No. 8," with boundaries running from the "northeast corner of Lot No. 8," across Fauries Road to an iron rod in "'the 1072 Contour," then "along said '1072 Contour,'" then back across Fauries Road to "the most southerly corner of said Lot No. 8," and then "along the southeast line of said Lot No. 8" to the beginning point. In other words, the Deed Without Warranty purports to convey the area in the contour zone between Elevation 1084 and Elevation 1072 that lies east of Lot 8, which includes the disputed open space.

In contrast to the Robinsons' theory, the Lances contend that the Spettle Deed granted MVICO fee-simple ownership only up to Elevation 1072, and not up to Elevation 1084. In their view, the Spettle Deed's and Partition Deed's references to the "backwater or flow line" refer to the top of the spillway, not the top of the dam, because the lake stores water only up to the spillway. Thus, the Spettle Deed conveyed the land up to Elevation 1072 to MVICO, not up to Elevation 1084, and the Partition Deed partitioned the land down to that same point, so the Spettles retained ownership of the land in the contour zone. And, according to the Lances, the Deed Without Warranty confirms that they purchased the portion of that land that constitutes the disputed area from the Franks.

8

The Robinsons filed this suit against the Lances and the Franks (collectively, the Lances) in June 2012, asserting claims for declaratory judgment, nuisance, and use of a fraudulent deed under Chapter 12 of the Civil Practices and Remedies Code. They later amended their petition to add claims to quiet title, for intentional infliction of emotional distress, intentional invasion of privacy, and civil conspiracy. They sought temporary and permanent injunctive relief, declaratory relief, actual damages, statutory damages, exemplary damages, court costs, and attorney's fees. The trial court granted a temporary restraining order and later a temporary injunction, finding that the Lances failed to establish that the Franks had any interest in the property the Deed Without Warranty describes.[4]

The Robinsons moved for partial summary judgment on their claim for declaratory judgment and on some elements of their claim for violations of Chapter 12. *See* TEX. CIV. PRAC. & REM. CODE § 12.003(a)(8). While that motion was pending, the Water District filed a petition in intervention asserting that it "owns the land below Elevation 1084 which encompasses the entire tract of land purportedly transferred from the Franks to the Lances" in the Deed Without Warranty. The Water District asserted claims for declaratory judgment, Chapter 12 violations, and civil conspiracy.

The trial court granted the Robinsons' motion for partial summary judgment and entered an order declaring that:

---

[4] The Lances did not take an interlocutory appeal from the temporary-injunction order, but later filed a motion to dissolve the injunction on the ground that the Robinsons lacked standing to challenge the Lance's ownership of the disputed area and thus the trial court lacked jurisdiction. The trial court denied that motion, and the Lances did take an interlocutory appeal from that order. The appellate court affirmed, finding that the Robinsons have standing as "interested persons" in light of their claim to an easement across the disputed area and to ownership of the dock and other improvements. *Lance v. Robinson*, No. 04-12-00754-CV, 2013 WL 820590, at *1 (Tex. App.—San Antonio, Mar. 6, 2013, no pet.).

- the Deed Without Warranty did not convey any ownership interest in the disputed area to the Lances because the Franks had no such interest to convey,

- the Water District owns the disputed area, as successor to MVICO as grantee under the Spettle Deed,

- the Robinsons and the Lances have easements to use and construct improvements in the disputed area, as assignees of the rights the Spettles reserved in the Spettle Deed and Mathilda retained in the Partition Deed,

- the Deed Without Warranty is an "invalid cloud and burden" on the Robinsons' easement rights,

- the Deed Without Warranty is a "deed or other record" under Chapter 12,

- the Lances and Franks used the Deed Without Warranty with an intent to "create the appearance of an actual conveyance of ownership in the disputed area," pursuant to Chapter 12, and

- the Robinsons own an "express easement" in the disputed area and have standing under Chapter 12.[5]

Following an extended hearing on the Lances' motion for rehearing, the trial court amended its order by striking through the declaration that the Water District owns the disputed area. As a result, on the issue of ownership, the final summary-judgment order declares that the Lances do not own the disputed area, but it does not declare who does own it. The Robinsons then moved to sever the court's order into a new cause, and both the Robinsons and the Water District moved for their attorney's fees. The trial court granted the motions, severed the order into a new cause, and entered a final judgment awarding attorney's fees to the Robinsons and the Water District. The Lances appealed, the court of appeals affirmed, and we granted the Lances' petition for review.

---

[5] The trial court denied the Robinsons' request for an additional declaration that the Lances and Franks used the Deed Without Warranty with intent to cause the Robinsons to "suffer financial injury" under Chapter 12.

10

## II.
## Summary-Judgment Evidence

The Lances first contend that the trial court erred in granting the Robinsons' summary-judgment motion because the Robinsons failed to attach any of the relevant deeds to that motion. At the earlier temporary-injunction hearing, the Robinsons offered certified copies of the deeds into evidence, and the trial court admitted them without objection. In their summary-judgment motion, the Robinson's expressly "referenced and specified" the injunction-hearing transcript and exhibits "as evidence in support of" the motion. At the summary-judgment hearing, the trial court judge had the temporary-injunction transcript—including the deeds and other exhibits—in front of him, reviewed the deeds, and discussed them with counsel, including the Lances' counsel, who never raised this issue or otherwise objected on the ground that the Robinsons had not re-filed the deeds as attachments to their summary-judgment motion. Nevertheless, the Lances now contend that the Robinsons failed to meet their summary-judgment burden because the deeds were not in evidence.

The court of appeals held that any defect in the summary-judgment evidence was not substantive, and thus the Lances waived this issue by failing to object in the trial court. — S.W.3d —, 2016 WL 147236, at *4–5 (Tex. App.—San Antonio 2016). Relying primarily on *MBank Brenham, N.A. v. Barrera*, 721 S.W.2d 840 (Tex. 1986) (per curiam), the Lances argue that a movant's failure to attach summary-judgment evidence to a summary-judgment motion creates a complete absence of evidence and thus constitutes substantive error that requires reversal even without an objection because all summary-judgment evidence must be "part of the summary judgment record." We disagree. It is true that the complete absence of evidence necessary to

11

support a summary judgment constitutes a substantive error that may be raised for the first time on appeal. *Id.* 842 (holding that "no evidence existed" to create a fact issue because respondent "never filed [the evidence] with the court as summary judgment proof").[6] But in *MBank* and similar cases, the necessary evidence was completely absent from the trial court's file, and not just from the "summary judgment record."

The Lances acknowledge that the trial court admitted the deeds as evidence at the temporary-injunction hearing, but contend that the Robinsons had to re-file them as attachments to their summary-judgment motion. Whether this alleged error involved the "form of the summary-judgment record" or its "substance" is irrelevant because the alleged error was not error at all. Our rules require a trial court to grant a summary-judgment motion if the evidence "*on file at the time of the hearing,* or filed thereafter and before judgment with permission of the court," establishes that the movant is "entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c) (emphasis added).[7] Here, the deeds were indisputably "on file" with the court at the time of the summary-judgment hearing. At the very end of the temporary-injunction hearing, after the Robinsons' attorney asked if he should "withdraw" the exhibits, the trial court announced, "I'm going to leave all the exhibits with the file." The court's docket sheet reflects that the court reporter filed the

---

[6] *See also Sorrells v. Giberson*, 780 S.W.2d 936, 937 (Tex. App.—Austin 1989, writ denied) (holding that appellant's failure to object to appellee's failure to attach promissory note to summary-judgment affidavit was "irrelevant to the issue of the sufficiency of [appellee's] proof to support summary judgment" because the note "was completely absent from the summary judgment record" and thus could not "serve as a basis for summary judgment"); *Trimble v. Gulf Paint & Battery, Inc.*, 728 S.W.2d 887, 888 (Tex. App.—Houston [1st Dist. 1987, no writ) (holding that failure to attach exhibits to summary-judgment evidence was a substantive defect because a summary-judgment motion "must be supported by its own summary judgment proof" and, "in order to constitute part of the summary judgment evidence, must be attached to the affidavit").

[7] The parties may rely on discovery products "not on file with the clerk" if they timely file copies "or a notice containing specific references to the discovery . . . together with a statement of intent to use the specified discovery as summary judgment proofs." TEX. R. CIV. P. 166a(d).

12

deeds with the court clerk that same day, just as the rules require. *See* TEX. R. CIV. P. 75a (requiring court reporter to "file with the clerk of the court all exhibits which were admitted into evidence . . . during the course of any hearing, proceeding, or trial"). The record thus establishes beyond doubt that the deeds were "on file at the time of the hearing," as rule 166a requires.

Nevertheless, the Lances contend that the deeds cannot be considered "filed" because they do not appear in the clerk's record of the summary-judgment hearing. Similarly, they argue the Robinsons could not rely on the deeds for summary-judgment purposes because they did not request an exhibits volume from the temporary-injunction hearing until after the case was on appeal. Therefore, they argue, "the record containing the deeds did not exist at the time of the summary judgment hearing." "At a minimum," they assert, "summary judgment evidence must be part of the summary judgment record in such a way that when the parties bring that record to an appellate court, that evidence will be found in that appellate record."

These arguments conflate the trial court's "file" with the clerk's and reporter's "records." *Compare* TEX. R. CIV. P. 75b (requiring all "filed exhibits" to "remain at all times in the clerk's office or in the court or in the custody of the clerk") *with* TEX. R. APP. P. 34.5, 34.6 (designating what "filings" should be included in the appellate record). The fact that evidence is not included in a clerk's record or reporter's record does not mean it was not "on file" with the trial court. While the trial court's "file" always exists, the court clerk and court reporter do not prepare the "record" until requested. *See* TEX. R. APP. P. 34.6(b)(1), 35.1, 35.3. An item may be on file with the court yet "omitted" from the record and thus "supplemented" to the record. TEX. R. APP. P. 34.5(c).

Here, while the deeds may not have been included in the "summary judgment record," the appellate record confirms that they were on file with the court at the time of the summary-judgment

13

hearing because they had been offered and admitted at the prior temporary-injunction hearing. They thus qualified as proper summary-judgment evidence, and the trial court did not err by relying on them. *See, e.g.*, *Stark v. Morgan*, 602 S.W.2d 298, 304 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) (holding exhibit "offered" at prior temporary-injunction hearing was "on file with the court" and thus properly "before the trial court for the purposes of the hearing on the motion for summary judgment").[8]

## III.
### Summary-Judgment Burden

The Lances next argue that the trial court erred by granting summary judgment because the Robinsons did not meet their summary-judgment burdens to support the trial court's declarations. Specifically, they challenge the trial court's declarations that (A) the Lances do not own the disputed area, (B) the Robinsons have an express easement over the disputed area, and (C) the Robinsons established certain elements of their Chapter 12 claim. In addition, they contend that (D) the trial court erred by awarding attorney's fees to the Robinsons and to the Water District.

---

[8] *See also, e.g.*, *Galindo v. Snoddy*, 415 S.W.3d 905, 914 (Tex. App.—Texarkana 2013, no pet.) (holding trial court was required "to consider the explicitly referenced summary judgment evidence that was on file" with the court); *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 581 (Tex. App.—Dallas 2007, no pet.) (noting that the rules "do not require that summary judgment evidence be physically attached to the motion"); *Johnson v. Driver*, 198 S.W.3d 359, 363 (Tex. App.—Tyler 2006, no pet.) (holding exhibits not attached to summary-judgment motion but attached to opposing party's response "were properly before the court at the time it ruled"); *Gerald C. Marshall & Co. v. Gilley*, No. 11-93-248-CV, 1994 WL 16189969, at *3 (Tex. App.—Eastland Nov. 17, 1994, no writ) (not designated for publication) (holding evidence submitted with two earlier summary-judgment motions were "on file" when judgment was entered and constituted "adequate summary judgment evidence"); *R.I.O. Sys., Inc. v. Union Carbide Corp.*, 780 S.W.2d 489, 492 (Tex. App.—Corpus Christi 1989, writ denied) (holding evidence "on file prior to the summary judgment hearing," including documents attached to earlier summary-judgment motion, were "proper summary judgment evidence"); *Vaughn v. Burroughs Corp.*, 705 S.W.2d 246, 248 (Tex. App.—Houston [14th Dist.] 1986, no writ) (holding evidence attached to earlier summary-judgment motion was "properly before the court"); *Dousson v. Disch*, 629 S.W.2d 111, 112 (Tex. App.—Dallas 1981, writ dism'd w.o.j.) (holding documents filed four months before summary-judgment motion were proper summary judgment evidence).

### A. Ownership interests

The trial court granted summary judgment declaring that the Deed Without Warranty did not convey any ownership interest in the disputed area to the Lances because the Franks had no such interest to convey, and that the Deed Without Warranty is therefore an "invalid cloud and burden" on the Robinson's easement rights. Initially, the court also declared that the Water District owns the disputed area, but it deleted that declaration in its amended summary-judgment order. The court's judgment thus declares that the Lances do not own the disputed area, but it does not declare who does own it.

The Lances challenge these declarations, arguing that the Robinsons did not bring the proper cause of action to challenge the Deed Without Warranty, that the Robinsons lacked standing to challenge the validity of the Deed Without Warranty, that the Robinsons were required to establish who *does* own the disputed area to prove that the Lances do *not* own it, and that the Robinsons failed to prove either of those facts. The Lances also complain that the appeals court failed to adequately address some of these arguments in violation of Texas Rule of Appellate Procedure 47.1. Although the court of appeals did inadequately address some of the Lances' arguments, none of the arguments merit reversal of the trial court's ownership declarations.

#### 1. Legal theories

The Robinsons pleaded and sought summary judgment on their claims regarding the parties' rights to the disputed area under the Declaratory Judgments Act. The trial court's declarations included declarations that the Lances do not have any ownership interest in the disputed area because the Franks had no interest in that land to convey in the Deed Without Warranty. The Lances argue that the Declaratory Judgments Act is the wrong vehicle to determine

15

title to the disputed area. Instead, they argue that the Robinsons had to plead and prove claims for trespass to try title. The Lances further argue that none of the Robinsons' claims supported the declaration that the Lances have created an "invalid cloud" on the alleged easement. We hold that the Declaratory Judgments Act was the proper mechanism by which the Robinsons could seek declarations regarding the Lances' authority to obstruct the Robinsons' access to the disputed area.

### a. Trespass to try title

The Lances argue that the trial court's "rulings concerning ownership, both for and against," cannot be determined in a suit for declaratory judgment, but instead "must be presented and determined under Trespass to Try Title principles." In response, the Robinsons assert that they were not required to file a trespass-to-try-title action because they do not claim any ownership or possessory rights to the disputed area, and instead are seeking only to protect their alleged easement.[9] We agree with the Robinsons.

The issue of whether a claimant must seek relief related to property interests through a trespass-to-try-title action, as opposed to a suit under the Declaratory Judgments Act, has been the source of some confusion in this Court and others. The Declaratory Judgments Act provides that a "person interested under a deed . . . or whose rights, status, or other legal relations are affected

---

[9] The Robinsons also respond by arguing that (1) the Lances waived this complaint by failing to adequately address it in their brief on the merits in this Court; (2) a declaratory-judgment action is an appropriate vehicle for an "equitable plea" to set aside a deed that is "fake" or fraudulent, even if the effect of the declaration is to determine title; and (3) the Deed Without Warranty is effectively a mere quitclaim deed that "raises no presumption of ownership, and therefore does not put title into issue." While we agree that the Lance's briefing on this point is less than robust, they do clearly assert that "rulings concerning ownership, both for and against, must be presented and determined under Trespass to Try Title principles," and that "finding ownership, or a lack thereof, in a party with a valid deed, is a determination involving ownership and that determination cannot be made under the Declaratory Judgments Act." While they failed to directly support these statements with citations to authority in their opening brief, they did cite and address several relevant authorities when discussing the Robinsons' responses to these points. Without deciding the Robinsons' waiver argument, we will liberally construe the Lances' brief and proceed to address this issue. Because we agree that the Robinsons were not required to file a trespass-to-try-title action because they do not claim any ownership or possessory right to the disputed area, we need not address their alternative arguments.

16

by a . . . contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE § 37.004(a). This action "provides an efficient vehicle for parties to seek a declaration of rights under certain instruments." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).

But the Texas Property Code states that a "trespass to try title action is *the* method of determining title to lands, tenements, or other real property." TEX. PROP. CODE § 22.001(a) (emphasis added). Actions under this statute "involve detailed pleading and proof requirements." *Martin*, 133 S.W.3d at 265 (citing TEX. R. CIV. P. 783–809). "To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Id.* (citing *Plumb v. Stuessy*, 617 S.W.2d 667, 668 (Tex. 1981)). Through the years, the issue of whether claimants were required to seek relief through a trespass-to-try-title action has been relevant to such questions as whether this Court had jurisdiction on appeal, whether particular proof was required to prevail, whether res judicata applied when the claimant was involved in multiple suits, and whether the parties could recover their attorney's fees. *See id.* at 264–67 (describing history of such disputes).[10]

---

[10] The issue of which theory applies when the parties dispute a boundary line between their adjacent properties presented particular difficulties for the courts. The parties to such a dispute necessarily compete for title to the disputed strip between the asserted boundaries, but they typically do not contest their opponent's ownership subject to the proper boundary. *See Martin*, 133 S.W.3d at 267. We thus held that, although such boundary disputes must be brought as trespass to try title actions, the requirements are "relaxed" when "there would have been no case but for the question of boundary," so that "a recorded deed is sufficient to show an interest in the disputed property without having to prove a formal chain of superior title." *Id.* at 265, 268 (citing *Plumb,* 617 S.W.2d at 669). The Legislature has since amended the Declaratory Judgments Act to expressly provide that, notwithstanding the trespass-to-try-title statute, a claimant may sue for declaratory relief "when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties." TEX. CIV. PRAC. & REM. CODE § 37.004(c).

The trespass-to-try-title statute, however, only applies when the claimant is seeking to establish or obtain *the claimant's* ownership or possessory right in the land at issue. While section 22.001(a) may be unclear on this point, *see* TEX. PROP. CODE § 22.001(a) ("A trespass to try title action is the method of determining title."), subsequent sections provide greater clarity. *See id.* §§ 22.002 (requiring the claimant to demonstrate "evidence of . . . sufficient title to maintain a trespass to try title action"), .003 (describing the judgment in a trespass-to-try title action as establishing "title or right to possession . . . against the party from whom the property is recovered"). Our procedural rules thus require the petition in a trespass-to-try-title action to expressly state that "the plaintiff was in possession of the premises or entitled to such possession." TEX. R. CIV. P. 783(d).

We have explained that the "plaintiff in a trespass to try title action must allege and prove the right to present possession of the land." *City of Mission v. Popplewell*, 294 S.W.2d 712, 714 (Tex. 1956). For example, we have held that claimants who sought to establish a future remainder interest in land that was subject to a life estate could not obtain such relief though a trespass-to-try-title action because the claimants "had no right of possession to the property at that time." *Dougherty v. Humphrey*, 424 S.W.2d 617, 621 (Tex. 1968). The trespass-to-try-title statute "is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner," and the plaintiff in such an action must "establish superior title" to the property. *Martin*, 133 S.W.3d at 265. A trespass-to-try-title plaintiff, in other words, "must recover upon the strength of his own title." *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994); *see Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 926 (Tex.

18

2013) (noting that a determination of the claimant's "legal interests and possessory rights . . . is the very relief that the trespass-to-try-title statute governs").

For this reason, we have explained that the trespass-to-try-title statute does not apply to a claimant who seeks to establish an easement, because such a claimant "does not have such a possessory right." *Popplewell*, 294 S.W.2d at 714. An easement "is a nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (citing RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 1.2 cmt. d). A claimant who prevails on a claim to establish an easement cannot prevail on a trespass-to-try-title claim without also establishing title or a possessory right. *Dougherty*, 424 S.W.2d at 621.

We hold that the Robinsons were not required to file a trespass-to-try-title action to assert their alleged easement rights over the disputed area in Redus Point. In seeking to establish alleged easement rights, the Robinsons do not assert any ownership or possessory interest in the disputed area. Although they do allege that the Water District owns the disputed area and they challenge the Lances' ownership claim, it was not necessary to resolve the ownership issue to determine the Robinson's easement rights. The Robinsons claim to have an easement over the disputed area regardless of whether the Water District or the Lances own the land, and a trespass-to-try-title action is not required when "ownership of the fee is not determinative of the existence of the easement" *Popplewell*, 294 S.W.2d at 714.

Nevertheless, the Robinsons challenged the Lances' denial of access to the disputed area on two different grounds. First, they argued that the Lances cannot deny them access because the Lances do not own the disputed area. Second, they argued that even if the Lances own the area,

19

the Robinsons have an easement over the disputed area. The trial court's declarations regarding ownership (*i.e.*, that the Deed Without Warranty did not convey any ownership interest in the disputed area to the Lances because the Franks had no such interest to convey) relate to the first argument, not to the second. But the Robinsons sought these declarations to defend their alleged nonpossessory easement, not to assert superior title or possessory rights in themselves. We hold that they could properly pursue that relief under the Declaratory Judgments Act, and were not required to sue for trespass to try title.

The Water District, however, intervened and alleged that it is the "title owner of the disputed tract and the surrounding area below Elevation 1084." Like the Robinsons, the Water District sued under the Declaratory Judgments Act, seeking declarations that it owns the disputed area and that the Lances do not. Because the Water District asserted superior title and possessory rights in itself, it could only bring that claim as a suit for trespass to try title. The trial court initially declared that the Water District owns the land, but it later amended its order to strike that declaration. Although the trial court declared that the Lances do not own the land, the effect of that declaration could only deprive the Lances of the right to exclude the Robinsons; it could not resolve any ownership dispute between the Lances and the Water District. Because the Lances and the Water District assert competing claims for superior title to the disputed area, those claims must be resolved through a suit for trespass to try title. The summary-judgment order before us today, however, does not resolve that dispute.

### b. Suit to quiet title

The Lances argue that the trial court erred by declaring that the Deed Without Warranty is an "invalid cloud and burden" on the Robinson's easement rights. First, they contend that the

Robinsons "did not plead a cause of action in equity to remove a cloud on an easement. And importantly, they did not move for summary judgment on this ground." Alternatively, they argue that a party cannot sue to quiet title by removing a cloud on title unless the party owns the title allegedly clouded. Because the Robinsons do not claim ownership in the disputed area, the Lances argue the Robinsons were not entitled to any declaration quieting title in the disputed area or removing any cloud on their alleged easement.

Based on the record before us, we agree that the Robinsons' pleadings do not support the trial court's declaration. In their original petition, the Robinsons did not plead any claim to quiet title. They did plead such a claim in their fifth amended petition, requesting legal and equitable relief to "cancel, quiet and remove the cloud created by the [Deed Without Warranty] from their easement rights, dominant estate and/or other rights in the disputed tract." But the Robinsons filed their fifth amended petition three months after they filed their motion for partial summary judgment. The record does not include any prior amended petitions, so we are unable to determine whether they pleaded a quiet-title claim before they moved for summary judgment.

In their summary-judgment motion, the Robinsons moved for a declaration that the Deed Without Warranty "is an invalid cloud on the ownership rights of the plaintiffs and [the Water District] in the disputed area." As the Lances note, however, the Robinsons do not assert any "ownership rights" in the disputed area, and the judgment declared that the Deed Without Warranty creates an "invalid cloud" on the Robinsons' easement rights, not on any ownership rights. We agree with the Lances that the Robinsons' pleadings do not support the trial court's declaration. We can find no evidence or indication, however, that the Lances ever objected to the invalid-cloud declaration on that ground.

21

The court of appeals held that the Lances waived any complaint about the invalid-cloud declaration by failing to adequately brief the issue. — S.W.3d at —. We agree with the Lances that the court of appeals erred in this conclusion. The Lances asserted in their brief to the court of appeals that a "deed cannot be a cloud on an easement" and a "cloud on title" only exists when a claim or encumbrance affects or impairs "the title to the owner of the property," citing *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Because the Robinsons "are not claiming to be the owners of the disputed area," and "[b]ecause it is irrelevant who owns the land, there is no such thing as a deed causing an invalid cloud on an easement." We hold this argument, though brief, was sufficient to preserve the substantive argument on appeal.

We have never addressed the nuanced differences between quiet-title claims, trespass-to-try-title claims, and modern declaratory-judgment claims in any real depth. And although we have noted in passing that a claim "for declaratory judgment . . . to remove cloud from title to their 'easements'" appeared sufficient, *see James v. Drye*, 320 S.W.2d 319, 323 (Tex. 1959), we have never directly addressed the question of whether a quiet-title claim is an appropriate vehicle to remove a cloud on an easement. The Texas courts of appeals have addressed quiet-title actions more extensively, explaining that such an action, "also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Longoria v. Lasater*, 292 S.W.3d 156, 165 n.7 (Tex. App.—San Antonio 2009, pet. denied)).

More specifically, the appellate courts have stated that a "suit to 'quiet title' and a 'trespass-to-try-title claim' are both actions to recover possession of land unlawfully withheld, though a

22

quiet-title suit is an equitable remedy whereas a trespass-to-try-title suit is a legal remedy afforded by statute." *Cameron Cty. v. Tompkins*, 422 S.W.3d 789, 797 (Tex. App.—Corpus Christi 2013, pet. denied). The quiet-title suit exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (Tex. 1886)). The plaintiff in a quiet-title suit "must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove." *Essex Crane*, 371 S.W.3d at 388 (citing *Hahn,* 321 S.W.3d at 531).

These decisions appear to support the Lances' argument that an equitable quiet-title action is available only to those who claim ownership in the property whose title is allegedly "clouded." The Robinsons, however, cite to other appellate-court decisions that appear to support their argument that such actions provide an appropriate method to remove a cloud on an alleged easement. *See, e.g.*, *Anderson v. McRae*, 495 S.W.2d 351, 356–57 (Tex. App.—Texarkana 1973, no writ) (holding subdivision lot owners were entitled to seek to quiet title through Declaratory Judgments Act for recreational easements in areas adjacent to lake); *Howard v. Young*, 210 S.W.2d 241, 243 (Tex. Civ. App. 1948, writ ref'd n.r.e.) (holding quiet title and injunctive relief were appropriate remedies when an easement's dimensions and validity were at issue). We find it unnecessary to decide that issue here, however, because the parties have identified no reason why the answer would make any difference in this case. If the trial court properly declared that the Deed Without Warranty conveyed no ownership interest to the Lances or that the Robinsons enjoy an easement over the disputed area regardless of who owns it, the declaration that the Lances created an "invalid cloud and burden" on the easement is irrelevant. And if the trial court erred by both its

23

ownership and easement declarations, its invalid-cloud declaration cannot stand. We thus decline to issue any advisory opinions in this case regarding the nature and requirements of a quiet-title action.

## 2.    Standing

The Lances argue that the trial court's ownership declarations constitute error because the Robinsons lack standing to challenge the Deed Without Warranty. Relying primarily on our decision in *Nobles v. Marcus*, 533 S.W.2d 923 (Tex. 1976), they argue that a claimant who is not a party to a deed cannot sue to set it aside. And until a court sets a deed aside, it remains "valid and represents prima facie evidence of title." *Id.* at 926; *see also Morlock, L.L.C. v. Bank of N.Y.*, 448 S.W.3d 514, 517 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("A third party lacks standing to challenge this voidable defect in the assignment."); *Lopez v. Morales*, No. 04-09-00476-CV, 2010 WL 3332318, at *3 (Tex. App.—San Antonio, Aug. 25, 2010, no writ) (mem. op.) ("[A] suit to set aside a deed obtained by fraud can only be maintained by the defrauded party.").

We do not agree that the *Nobles* rule applies here. The *Nobles* plaintiffs sought to enforce a judgment lien against property the judgment debtor, Macoa, had deeded to others. *Nobles*, 533 S.W.2d at 925. But instead of pleading and proving "there had been a fraudulent conveyance that was a fraud upon" themselves, the plaintiffs alleged that the deed was invalid because Macoa's corporate officer committed forgery and a fraud *against Macoa* by signing the deed without authority. *Id.* at 925–26.  They pleaded these acts "as frauds upon the corporation and not as fraud upon their own rights as creditors." *Id.* at 926. After holding that the facts did not support a forgery

24

claim, we held that the plaintiffs lacked standing to pursue the void-for-fraud claim because deeds "procured by fraud are voidable only, not void, at the election of the grantor." *Id.*

We did not hold in *Nobles* that grantors are the only parties who can ever sue to set aside a deed for fraud. In fact, we noted that the law is "well settled in Texas" that creditors who plead a fraudulent-conveyance claim—meaning a claim for fraud against *themselves* as creditors—may "maintain an action 'to vacate a fraudulent conveyance of his debtor's land.'" *Id.* at 925 (quoting *Eckert v. Wendel*, 40 S.W.2d 796, 797 (Tex. 1931)). But because "only the person whose primary legal right has been breached may seek redress for an injury," a creditor cannot seek to set aside a conveyance based on fraud against *the grantor*. *Id.* at 927. "A suit to set aside a deed obtained by fraud can only be maintained by the defrauded party." *Id.* "The plaintiffs lack standing to bring the present action, not because they incompletely pleaded the elements of a fraudulent conveyance but because they pleaded fraud, and under those pleadings they were not the defrauded party." *Id.*

In this case, however, the Robinsons do not seek to set aside the Deed Without Warranty based on fraud by the grantees (the Lances) against the grantors (the Franks). Rather, their claim is that the Lances and the Franks both committed fraud against third parties (the Robinsons) by creating and presenting a deed that purports to convey an interest that neither of them owns. The Robinsons have standing to challenge the deed's effect on their alleged easement because they are the ones who are allegedly suffering harm. If the deed is fraudulent or otherwise invalid, the Franks as grantors are not harmed; the Robinsons are. Whether the Robinsons can challenge the deed as fraudulent or merely as ineffective to convey any interest does not matter; in either case, the Robinsons, who allege an easement interest in the land, may seek a declaratory judgment that the deed conveyed no ownership interest. We conclude that the Robinsons have standing to seek a

25

declaration that the deed is ineffective because they allege the deed harms their own interests, not those of the parties to the deed.

### 3. Evidentiary support

Having concluded that the Robinsons had standing to sue for ownership declarations and that their pleadings support that relief, we now turn to the Lances' arguments that the evidence does not support the declarations. The court of appeals did not address these evidentiary arguments. Instead, after holding that the deeds were properly in evidence and that the Robinsons were not required to sue for trespass to try title, the court concluded that none of the Lances' remaining arguments could be "construed to challenge the trial court's" declarations regarding ownership. — S.W.3d —. The Lances complain that the court of appeals violated Rule 47.1 by failing to address "every issue raised and necessary to final disposition of the appeal." *See* TEX. R. APP. P. 47.1; *see also Sloan v. Law Office of Oscar C. Gonzalez, Inc.*, 479 S.W.3d 833, 834 (Tex. 2016) ("This Court has held that 'this provision is mandatory, and the courts of appeals are not at liberty to disregard it.'") (quoting *West v. Robinson*, 180 S.W.3d 575, 577 (Tex. 2005) (per curiam)). Any issue that is not properly presented on appeal, however, is not considered raised for purposes of Rule 47.1. Further, Rule 47.1 requires only that the court of appeals address issues necessary to dispose of the appeal. TEX. R. APP. P. 47.1.

We agree with the Lances that they challenged the ownership evidence on appeal. In their merits brief,[11] the Lances argued that the evidence did not conclusively establish that they had no

---

[11] The brief's "Issues Presented" included whether the Robinsons met "their burden of conclusively establishing each element of their causes of action," and whether the trial court had a "factual basis to render a summary judgment for the Plaintiffs declaring that the Deed Without Warranty did not convey ownership or that the Franks had no ownership interest to convey to the Lances or that the Lances do not own the disputed area." In the "Summary of the Argument" section, the Lances asserted that, beyond the alleged procedural errors, the Robinsons

ownership in the disputed area because (1) the Robinsons' expert agreed that "there are a number of homes that have been built below elevation 1084 along Medina Lake's (former) shoreline," and that testimony "conflicts with the [Robinsons'] testimony that they believe they have access to lake property at any location if the property is below elevation 1084"; and (2) F.D. Franks (the grantor in the Deed Without Warranty) "testified that it was his intent to convey whatever rights, if any, he had to that area to the Lances." The Lances argued that this evidence created a fact issue, so "ownership of the disputed area remains disputed and as long as that dispute remains, there can be no determination of title." In short, they asserted, "Nothing was conclusively proven at the hearing on the issues of ownership to the disputed area or the easement rights of the Plaintiffs to the disputed area." We agree that the court of appeals should have addressed these evidentiary arguments, however meritless they may be.

But they are meritless, and we agree with the trial court that, at least on this record, no evidence could support a finding that Lances own the disputed area. The Lances rely on the Deed Without Warranty to establish their ownership, but no evidence establishes that the Franks had any interest in the land that deed describes. The only deed by which the Franks obtained any interest in land on Redus Point is the deed the Franks received from their predecessors, the Prados. That deed, however, describes the property conveyed as being "Lot 8" in the Redus Point Addition subdivision, as recorded in the Bandera County plat records. The evidence establishes that a prior owner, Dee Walker, platted the Redus Point Addition in 1950. Walker acquired the land in 1947, as part of a 200-acre conveyance by deed from Mathilda Spettle Redus. The deed from Mathilda

---

"failed to prove the issue of ownership as a matter of law" because the evidence "does not establish title to the disputed area."

to Walker described 200 acres in Bandera County (including 125 acres out of Survey No. 231) using metes and bounds beginning at a point on the "No. 1084 contour line," returning to another point on the "No. 1084 contour line," then "Northerly with the . . . No. 1084 contour line, to the point of beginning."

The Redus-to-Walker deed appears to establish that, whatever the 1917 Spettle Deed's and the 1917 Partition Deed's references to the "backwater and flow line" may have referred to (*i.e.*, to the height of the dam at Elevation 1084 or to the height of the spillway at Elevation 1072), the land Walker acquired from Mathilda in 1947 extended only to Elevation 1084. The uncontroverted evidence also establishes that, when Walker platted the Redus Point Addition subdivision in 1950, he platted the lots to the Elevation 1084 boundary, consistent with the land he had acquired from Mathilda.[12] Except for the Deed Without Warranty, all of the subsequent deeds involving property on Redus Point, including the Prados' deed to the Franks and the Franks' Warranty Deed to the Lances, identify the land conveyed by referring not to metes and bounds, but to specific "Lots" in the Redus Point Addition, as identified in the plat of record. So regardless of whether Mathilda or MVICO owned the contour zone area between Elevation 1084 and Elevation 1072 after the Spettle Deed and Partition Deed, this record can only establish that the property Walker received from Mathilda and then platted and conveyed extends only to Elevation 1084. And since Walker is the

---

[12] The 1950 plat was admitted into evidence at the temporary-injunction hearing and a copy is in the Court's record, but its print is not sufficiently legible to confirm that the lots were platted to Elevation 1084. The Robinsons' expert witness, however, a professional land surveyor, testified that he had reviewed the plat and all of the deeds and that Redus Point is "platted to Elevation 1084." The Robinsons also offered an exhibit that summarized a "chronology" of the relevant deeds, which refers to the 1950 plat as including "27 lots, platted to Elevation 1084 meander lines." This exhibit was admitted into evidence without objection. Although the Lances contend that some evidence would support the conclusion that the Spettle Deed and Partition Deed involved land that reached down to Elevation 1072, we have found no record evidence that the land deeded to Walker or the Redus Point lots, as platted or as subsequently conveyed, extend past Elevation 1084.

sole source of any interest the Lances or Franks claim, no evidence exists in this record that the Franks had any interest to convey to the Lances in land below Elevation 1084.

Like the trial court, however, we do not hold that the Water District owns the disputed area described in the Deed Without Warranty, in the contour zone surrounding Redus Point, or in any of the contour zone surrounding Medina Lake. That is one of many issues that have given rise to other litigation involving Medina Lake,[13] but we cannot and need not resolve it here. MVICO acquired different rights in the lands for Medina Lake from numerous different landowners through different deeds that each contain their own unique provisions.

Even as to the disputed area at issue here, we cannot say that the record in this case conclusively establishes that the Water District or any other party owns it. In support of their assertion that the Water District owns it, the Robinsons and the Water District rely on the Spettle Deed, the Partition Deed, and the testimony of their expert witness. But the Spettle Deed and Partition Deed never mention Elevation 1084 or Elevation 1072; they merely refer to "storing water," "backing water," the "flow line," and "the backwater or flow line." The Robinsons' expert

---

[13] *See, e.g.*, *Whalen v. Firmin*, No. 04-99-00056-CV, 1999 WL 1246928, at *1 (Tex. App.—San Antonio Dec. 22, 1999, no pet.) (not designated for publication) (addressing similar dispute arising from deed without warranty conveying lot in contour zone in different Medina Lake subdivision); *Bexar Medina Atascosa Water Dist. v. Bexar Medina Atascosa Landowners' Ass'n*, 2 S.W.3d 459, 462 (Tex. App.—San Antonio 1999, pet. denied) (affirming summary judgment for landowners finding Water District violated Open Meetings Act); *Haby v. Howard*, 757 S.W.2d 34, 36–40 (Tex. App.—San Antonio 1988, writ denied) (holding fact issues precluded summary judgment in dispute between private owners over whether deed's references to "high datum water line" and "fronting and adjoining Medina Lake" referred to the "1084 foot natural contour line" or the "1072 foot natural contour line"); *Medina Lake Prot. Ass'n v. Bexar-Medina-Atascosa Ctys. Water Control & Imp. Dist. No. 1*, 656 S.W.2d 91, 96 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) (holding that landowners established that Water District impliedly dedicated road across the spillway and dam as a public road); *Bexar-Medina-Atascosa Ctys. Water Control & Imp. Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 780 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.) (holding Water District lacked authority to enforce regulations governing recreational activities "below the 1084 foot elevation" against plaintiffs who "resided outside of District's regulatory area"); *Bexar-Medina-Atascosa Ctys. Water Imp. Dist. No. 1 v. Wallace*, 619 S.W.2d 551, 552–56 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.); *see also* Stephan Rogers, *Judge Approves WPOA-BMA Settlement*, THE BANDERA BULLETIN (April 26, 2005) (describing court-approved settlement of litigation between Water District and owners of waterfront property on Medina Lake), http://www.banderabulletin.com/news/article_dd33b8f4-f468-5b46-ab0f-11d36ac413c2.html.

made no attempt to define the land MVICO acquired through the Spettle Deed or the land the Spettles partitioned in the Partition Deed based on the metes-and-bounds descriptions in the deeds. Instead, he testified merely to his opinion that Elevation 1084 is the "boundary line between [the Water District property] and all the adjoining land" because that is the elevation at which the reservoir "stores water." But he made no effort to address the Lances' argument that the reservoir "stores water" only up to the level of the spillway (Elevation 1072), not up to the top of the dam, and he admitted that many Medina Lake residents own land and have homes below Elevation 1084. We find that his effort to define the boundaries based on the deeds' references to "backwater or flow lines," without attempting to follow the actual metes-and-bounds descriptions, is insufficient to establish the boundaries as a matter of law. Thus, even if the Water District had properly pleaded their claim as a trespass-to-try-title suit, we agree with the trial court's decision not to declare that the Water District owns the disputed area or any land in the contour zone, at least based on this summary-judgment record.

The Lances argue, however, that by failing to prove who owns the disputed area, the Robinsons necessarily failed to prove that the Lances do not own it. We disagree. As we have explained, the Lances claim their title from the Franks, who claim theirs from the Prados, who in turn must trace theirs to Walker, who this record establishes only owned and platted Redus Point down to Elevation 1084. That evidence sufficiently establishes that the Lances do not own the disputed area, regardless of who does own it. We conclude that the trial court did not err in granting summary judgment on this record declaring that the Deed Without Warranty did not convey any ownership interest in the disputed area to the Lances because the Franks had no such interest to

30

convey. And as the trial court properly concluded, if the Lances do not own the disputed area, they have no authority to deny the Robinsons or others access to it.

**B.      Easement interests**

Having addressed the trial court's declarations regarding ownership of the disputed area, we now turn to its declarations regarding the Robinsons' claim to an easement. The court of appeals noted that, because the Lances' lack of any interest in the disputed area deprives them of any right to exclude the Robinsons from it, "it would appear the remaining arguments presented are moot." — S.W.3d at —. But the court went on to address the remaining claims because they "pertain to the origin and continuing validity of the Robinson parties' asserted easement to the use and enjoyment of the subject land." *Id.*

We agree that, for purposes of resolving the Robinsons' declaratory-judgment claim, our holding that the Lances do not own the disputed area makes it unnecessary to decide whether the Robinsons have a valid easement. Because the Lances do not own the disputed area, they have no authority to deny the Robinsons access and no standing to contest the alleged easement. Absent some dispute regarding their possible joint rights as alleged easement holders, there can be no justiciable controversy between them. Any dispute over the existence, scope, or validity of the alleged easement must occur between the Robinsons and whoever owns the disputed area.

The validity of the Robinsons' alleged easement could remain relevant, however, to the issue of whether they have standing to pursue their claim for statutory violations under Chapter 12. As explained below, however, we conclude that the Lances have waived any challenges to that issue, at least for purposes of this appeal.

31

## C.    Chapter 12

In addition to their claims for declaratory relief, the Robinsons sought summary judgment on certain elements of their claim under Chapter 12 of the Civil Practice and Remedies Code. Chapter 12 prohibits a person from making, presenting, or using a "document or other record" with:

(1)    *knowledge* that the document or other record is a *fraudulent* court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2)    *intent* that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a *valid* lien or claim against real or personal property or an interest in real or personal property; and

(3)    *intent* to cause another person to suffer:
    (A)    physical injury;
    (B)    financial injury; or
    (C)    mental anguish or emotional distress.

TEX. CIV. PRAC. & REM. CODE § 12.002(a) (emphases added). A person who violates this prohibition is liable to each injured person for (1) actual damages or $10,000, whichever is greater, (2) court costs, (3) reasonable attorney's fees, and (4) exemplary damages "in an amount determined by the court." *Id.* § 12.002(b). When the violation involves a "fraudulent lien or claim against real or personal property or an interest in real or personal property," any "person who owns an interest in the real or personal property" may sue for such relief. *Id.* § 12.003(8).

The Robinsons alleged that the Franks and Lances violated Chapter 12 by executing, presenting, filing, and relying on the Deed Without Warranty. The trial court granted summary judgment on this claim in part, declaring that the Deed Without Warranty is a "deed [sic] or other record" and that the Lances "made, used, and/or presented the Deed Without Warranty with the

32

intent to create the appearance of an actual conveyance of ownership in the disputed area." These declarations indicate that the Robinsons have established the statute's second requirement. The court also declared that the Robinsons "own an express easement in the disputed area, and have standing under [Chapter 12]." The Robinsons did not seek a summary-judgment declaration, however, that the Lances and Franks knew that the Deed Without Warranty was "fraudulent," and the trial court declined to declare that the Lances used the deed with the intent to cause the Robinsons to "suffer financial injury," so the Robinsons have not obtained summary judgment on the statute's first and third requirements.

The Lances' challenges to the trial court's Chapter 12 declarations are confusing at best. They begin by asserting that "there is . . . no support for [the] declarations the judgment makes as to [the] elements of this claim." They then suggest that, in "the interest of judicial economy, this Court should make that determination now so that the Defendants, on remand, will not be met with having to defend a Chapter 12 claim." Finally, citing to no legal authorities at all, they offer a brief challenge to two of the trial court's Chapter 12 declarations. First, they assert that the Robinsons lack standing under Chapter 12 because (a) they "do not own an express easement in the disputed area," and (b) even if they did own an easement, their "easement rights cannot be impaired by any owner or by any deed. Ownership does not matter." Second, they argue that "the very nature of a deed without warranty negates the trial court's finding" that the Lances intended to "create the appearance of an actual conveyance of ownership in the disputed area," apparently because a deed without warranty makes "no promise or guarantee of ownership."

The Lances block-copied these arguments from the merits brief they filed in the court of appeals. Like us, the court of appeals found them to be "disjointed statements that propose no clear

33

or concise argument." — S.W.3d —. As that court noted, the Lances' assertion that we should determine now that "there is . . . no support" for the declarations "in the interest of justice," so that the Lances will not have to defend the Chapter 12 claim on remand, appears to argue that *the Lances* are entitled to summary judgment on this claim. And as the court of appeals concluded, "even if this court were to make the determination proposed, given that this is an appeal from summary judgment, this court cannot make such a determination, nor would any determination preclude any litigation on remand." — S.W.3d —. For this reason, the court summarily overruled this issue and declined to address the Lances' specific arguments.

In their responsive brief in this Court, the Robinsons note that their Chapter 12 claims remain pending in the trial court *in the original case* from which this case was severed. Because of this, they assert, without any further explanation, that "the merits" of the trial court's Chapter 12 declarations "are not before this Court." Based on that assertion, the Lances may raise any jurisdictional challenges to the Robinsons' Chapter 12 claims, including any challenge to the Robinsons' standing to pursue such claims, in the pending original case.

We conclude that the court of appeals did not err in declining to address the Lances' arguments on the Chapter 12 claims, and we decline to address them for the same reason. Procedurally, we—like the court of appeals—cannot issue any decision on those claims that would protect the Lances from having to defend them in the original case. And substantively, we simply do not comprehend the Lances' arguments. Their assertion that the Robinsons lack standing (regardless of whether they have an easement) because easement rights "cannot be impaired by any owner or by any deed" seems to contradict their reliance on the Deed Without Warranty as the basis for denying the Robinsons access to the disputed area. And their argument that a Deed

34

Without Warranty cannot be intended to be an "actual conveyance of property" contradicts their claim that, unlike a "quitclaim" deed, the Deed Without Warranty gave them ownership of the disputed area. In the absence of any citations to legal authorities that support or clarify these contentions, we decline to consider them.[14]

**D.      Attorney's fees**

Finally, the Lances argue that the trial court erred by awarding attorney's fees to the Robinsons and to the Water District under the Declaratory Judgments Act. Specifically, they assert that both awards lack evidentiary support and neither is "equitable and just."

The Robinsons respond by asserting that the Lances waived review of their attorney's fees by failing to raise it as an issue it their petition for review in this Court. The Lances did not note attorney's fees as a separate issue in their petition for review, but they did address attorney's fees under their general issue that the court of appeals "failed to address numerous issues raised and necessary to final disposition of the appeal in violation of Texas Rule of Appellate Procedure 47.1." *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 n.1 (Tex. 2004); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) ("[I]t is our practice to construe liberally points of error in order to obtain a just, fair, and equitable adjudication of the rights of the

---

[14] We do note our disagreement, however, with the Robinsons' argument that the court of appeals has already determined their standing under Chapter 12 in the Lances' interlocutory appeal from the trial court's denial of the motion to dissolve the temporary injunction, and that the Lances are bound to that determination. *See Lance*, 2013 WL 820590, at *5. The court of appeals did not hold that the Robinsons had standing under Chapter 12; it held only that for the purposes of deciding whether the trial court abused its discretion in refusing to dissolve the temporary injunction based on the Lances' claim that the Robinsons lacked standing, "both [the Robinsons'] pleadings and their arguments to the trial court at the hearing on the motion to dissolve support [the Robinsons'] claim of standing as easement holders and personal property owners under section 12.003(a)(8)." *Id.* Because the issue of whether the Robinsons proved standing as a matter of law presents a substantially different question than the one presented regarding the temporary injunction, the law-of-the-case doctrine does not support the Robinsons' argument on this point. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) ("Further, the doctrine does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved on the first trial.").

litigants."). However, their assertions as to that issue were limited solely to the attorney's fees awarded to the Water District and did not address the award of attorney's fees to the Robinsons. We agree with the Robinson that the Lances waived any challenge to the Robinsons' fee award by failing to adequately raise the issue in their petition for review. *Guitar Holding Co. v. Hudspeth Cty. Underground Water Conservation Dist. No. 1*, 263 S.W.3d 910, 918 (Tex. 2008) ("[I]ssues not presented in the petition for review and brief on the merits are waived.").

Regarding the fees awarded to the Water District, the Lances argue that the award is arbitrary and unreasonable because the Water District voluntarily intervened in this suit to assert its claim to ownership of the disputed area, the Water District did not move for summary judgment on that or any other claim, and the trial court refused to declare that the Water District owns the disputed area. They also contend that the court of appeals violated Rule 47.1 by failing to address these arguments. We agree that the court of appeals should have addressed the Water District's fee award. But in light of our holding that the Water District had to bring any claim to ownership of the disputed area as a trespass-to-try-title action, and that such ownership is irrelevant to the resolution of this suit in light of the court's determination that the Lances do not own the disputed area, we conclude that the trial court must reconsider this fee award. We reverse the award of fees to the Water District and remand the case to the trial court for reconsideration of that award. TEX. CIV. PRAC. & REM. CODE § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

## IV.
## Conclusion

We affirm that part of the court of appeals' judgment upholding the trial court's declarations that the Lances do not own the disputed area described in the Deed Without Warranty.

In light of that holding, we do not decide whether the Deed Without Warranty creates a cloud on the Robinsons' alleged easement over the disputed area, nor do we address the validity of that alleged easement. Because the Lances do not own the disputed area, they have no standing to challenge the Robinsons' alleged easement over that area or authority to exclude the Robinsons from the area. We hold that the Lances waived any challenge to the Chapter 12 declarations and any challenge to the attorney's fees awarded to the Robinsons. We reverse that part of the court of appeals' judgment upholding the award of attorney's fees to the Water District, however, and remand this case to the trial court for further proceedings consistent with this opinion.

_____
Jeffrey S. Boyd
Justice

Opinion delivered:  March 23, 2018