Opinion issued August 3, 2021



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-19-00815-CV

—————————————

## DIANA GORDON OFFORD, Appellant

## V.

## APRIL CARSON, Appellee

On Appeal from the 434th District Court
Fort Bend County, Texas
Trial Court Case No. 18-DCV-250207

## MEMORANDUM OPINION

This suit involves a dispute over a piece of real property located in Fulshear, Texas (the Fulshear Lot). The Fulshear Lot has already been the subject of litigation in at least two prior suits, which established the property as being part of the Estate of Winter Gordon, the father of appellant Diana Gordon Offord and the

grandfather of appellee April Carson. Carson subsequently filed the instant suit against Offord seeking to remove the cloud on her title to the Fulshear Lot created by a 2016 "Correction Deed" filed by Offord's attorney naming Offord as the grantee. The trial court granted summary judgment in favor of Carson, ultimately declaring that the Correction Deed was invalid and that Carson "owns the property in fee simple absolute, and [Offord] [is] barred from asserting any right, title or interest in or to the property . . . as a result of the [Correction Deed]."

Offord challenges the trial court's summary judgment on the grounds that (1) the trial court erred in declaring the ownership of the Fulshear Lot based on Carson's suit for declaratory judgment and should, instead, have required Carson to proceed with a trespass-to-try-title suit pursuant to Texas Property Code chapter 22, which does not authorize the award of attorney's fees; and (2) the trial court erred in declaring the correction deed invalid.

We modify the judgment to delete the attorney's fees award, and we affirm as modified.

**Background**

In February 2008, the Fort Bend County Court at Law No. 4 appointed Offord as the "Guardian of the Estate of Winter Gordon,"[1] her father. The order

---

[1] The order identified Offord as the "Guardian of the Estate of Winter Gordon, Jr., a/k/a Winter Gordon, Sr." He is referred to throughout the records as "Winter Gordon, Jr., a/k/a Winter Gordon, Sr.," as Winter Gordon, Jr., as Winter Gordon,

2

appointing her Guardian found that Winter Gordon was "totally without capacity" due to a mental condition and that appointment of Offord as the guardian of his estate was appropriate.

In 2009, the Fulshear lot was the subject of a delinquent tax suit in the 240th District Court of Fort Bend County filed by various taxing entities, including Fort Bend County.[2] As part of the lawsuit, Offord as "Guardian of the Estate of Incapacitated Person, Winter Gordon," filed "Motion to Quiet Title" to the Fulshear Lot based on a claim of adverse possession. The final judgment in that case (the 2010 Judgment) identified "Diana G. Offord, Guardian of the Estate of Incapacitated Person, Winter Gordon ('Offord')" as a defendant and the cross-complainant seeking title to the Fulshear Lot by adverse possession. The 2010 Judgment contained a finding that "Offord acquired title by peaceable and adverse possession, upon the following described property as set out below, in fee simple, free of any and all encumbrances and clouds of title and clear of the purported interest of the Defendants [Fort Bend County et al.]."

---

Sr., and as Gordon Winter. For ease of reference, we refer to him simply as Winter Gordon.

[2] It appears from the record that George Gordon and several other parties were the owners of record for the Fulshear Lot at the time the tax suit was filed. The relationship of these parties to Offord, Winter Gordon, or Carson is not explained in the record.

3

Following this judgment, Offord's attorney, Diogu Kalu Diogu II, filed a deed dated October 8, 2010 (2010 Deed). The 2010 Deed identified multiple grantors, including George D. Gordon and the other cross-defendants from the 2010 Judgment. The grantee on the 2010 Deed was identified as "Diana G. Offord AKA Diana Gordon Offord as Guardian of the Estate of Incapacitated Person, Winter Gordon, Jr., A.K.A. Winter Gordon, Sr." The 2010 Deed specifically referred to the 2010 Judgment awarding title of the Fulshear Lot based on the claim of adverse possession.

Winter Gordon died on October 7, 2011. Winter Gordon's Last Will and Testament was found valid and admitted to probate on October 5, 2015, in the Fort Bend County Court at Law No. 2. Carson, Winter Gordon's granddaughter, was named as his sole heir. Records from the probate proceedings included an amended inventory of Winter Gordon's estate, dated April 25, 2016, showing that the Fulshear Lot was an asset of Winter Gordon's estate. The record also contained an uncertified, unofficial copy of written objections and motion to amend the inventory filed on Offord's behalf by her attorney Diogu. Offord objected to the inclusion of the Fulshear Lot as an asset of Winter Gordon's estate, arguing that it was not part of the estate, and seeking to amend the inventory accordingly. These objections were filed June 1, 2016, but the record does not contain any indication that the probate court ruled specifically on the objections and motion to amend the

4

inventory. Rather, the probate court approved the amended inventory dated April 25, 2016, confirming the Fulshear Lot as an asset of the Estate. The order approving the inventory stated, "The foregoing Amended Inventory, Appraisement and List of Claims of the above estate having been filed and presented; objections having been heard on 9-19-16; the court having considered and examined the same, is satisfied that it should be approved."

While these proceedings were still unfolding in the probate court, Offord created the "Correction Deed" for the Fulshear Lot dated August 2, 2016. Offord's attorney filed the Correction Deed naming "Diana Gordon Offord" as the new grantee. The Correction Deed itself identified the reason for correction:

> This is the correction deed, given and accepted to avoid a mutual mistake which INCORRECTLY NAMED DIANA GORDON OFFORD AS DIANA G. OFFORD AKA DIANA GORDON OFFORD AS GUARDIAN OF THE ESTATE OF INCAPACITATED PERSON, WINTER GORDON, JR AKA WINTER GORDON SR and is recorded in instrument number: 2010099315 of the Deed Records of Fort Bend County, Texas as such in substitution for such earlier deed dated on the 08th, October 2010 and it shall be effectual as of and retroactive to such date.

The 2016 Correction Deed, like the 2010 Deed, referenced the 2010 Judgment. The Correction Deed was executed only by Offord's attorney Diogu Kalu Diogu II and filed in the real property records.

Following the probate court's approval of the inventory, the executor of Winter Gordon's estate executed a deed conveying the Fulshear Lot to Carson as the heir of Winter Gordon.

On April 3, 2018, Carson filed her petition in the underlying case in the 434th District Court of Fort Bend County, asserting that the Fulshear Lot remained in Winter Gordon's estate and, thus, was among the parcels of land inherited by her following Gordon's death. Carson further asserted that Offord

> has clouded [Carson's] title to real property by asserting an interest in the [Fulshear Lot] owned by Carson . . . based on a spurious "Correction Deed" purportedly made and executed by [Offord's] counsel, Diogu Kalu Diogu, III, LL.M., on behalf of [Offord] on August 30, 2016, whereby [Offord] claims, individually, all right, title and interest in and to the real property.

Carson asserted that the Correction Deed was "invalid, subject to cancellation and should be adjudicated a nullity" because the Fulshear Lot was the property of Winter Gordon's estate; Offord, as his guardian, was not authorized to transfer the property; the Fulshear Lot was, thus, passed to Carson upon Winter Gordon's death and the admission of his will to probate; the Correction Deed was an "unlawful attempt by [Offord and her attorney] to defraud [Carson]"; and the "claim made by [Offord] to the Fulshear Lot clouds the title of [Carson] to the land, depreciates the market value, and prevents [Carson] from enjoying the use of the property and [Carson's] own best interest as owner." Carson asked that the trial court declare the Correction Deed "cancelled, null and void, and of no further force

6

or effect," that her title to the Fulshear Lot "be quieted," and that she be adjudged the owner of the Fulshear Lot entitled to possession. She also sought attorney's fees.

Offord responded with a general denial and specifically stated that she "pleads not guilty as this is a trespass to try title action." She further asserted that Carson lacked standing to challenge the Correction Deed, and she made a demand that Carson furnish to Offord and file with the court "a certified copy of abstract of title to the premises in question [p]ursuant to Rule 791 and 792 of the Texas Rules of Civil Procedure."[3]

Carson moved for summary judgment on her claim that the Correction Deed is invalid. Carson asserted that the Correction Deed was invalid pursuant to Property Code section 5.029, permitting material corrections of conveyances, because it was not executed by each party to the original instrument. She provided documents setting out the transactions described above in support of her motion for summary judgment. Offord responded that the Correction Deed made a nonmaterial correction pursuant to section 5.028 and that Carson did not have any valid claim to the Fulshear Lot because it never entered Winter Gordon's estate. To

---

[3]     Carson did eventually file an abstract of title with the reservation that she nevertheless contended that it was not required and that the case was not a trespass-to-try-title suit.

7

support her claim, Offord relied on the 2010 Judgment, 2010 Deed, and 2016 Correction Deed, plus her own affidavit and that of her attorney.

The trial court granted Carson's motion for summary judgment, determining that the 2016 Correction Deed was invalid, and then held a hearing on the issue of attorney's fees. The trial court's final judgment included findings that (1) the Correction Deed "is not a valid correction deed, does not convey any right, title or interest to the property therein described to Diana Gordon Offord, and should be cancelled of record" and (2) Carson is entitled to recover reasonable attorney's fees from Gordon and that $15,023 was reasonable and necessary. The trial court ordered, in its final judgment, that the Correction Deed "is null and void and cancelled of record" and that Carson "owns the property in fee simple absolute, and Defendant Diana Gordon Offord . . . [is] barred from asserting any right, title or interest in or to the property . . . as a result of the [Correction Deed]." The trial court also awarded Carson $15,023 in attorney's fees pursuant to the Declaratory Judgment Act (DJA), Civil Practice and Remedies Code section 37.009. This appeal followed.

**Summary Judgment Standard of Review**

Offord's primary complaint on appeal challenges the trial court's grant of summary judgment that formed the basis of the final judgment rendered in this case. We review a trial court's summary judgment de novo. *Merriman v. XTO*

8

*Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020).

In a traditional summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Hillis v. McCall*, 602 S.W.3d 436, 439–40 (Tex. 2020). A party moving for summary judgment on one of its own claims must conclusively prove all essential elements of the claim. *See Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). A defendant may also prevail by traditional summary judgment if it conclusively negates at least one essential element of a plaintiff's claim or conclusively proves an affirmative defense. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary-judgment evidence supporting both motions and render the judgment that the trial court should have rendered. *Merriman*, 407 S.W.3d at 248.

## Nature of Proceeding

In her first issue, Offord argues in part that the trial court erred in "declaring the ownership of the [Fulshear Lot] based on an action for declaratory judgment" and that the trial court should, instead, have required Carson to proceed with a trespass-to-try-title suit pursuant to Texas Property Code chapter 22.

We first observe that Offord failed to file special exceptions. *See* TEX. R. CIV. P. 91 (providing for filing of special exceptions to challenge defective pleadings); *Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021) ("The proper response to a legally or factually infirm pleading is to file special exceptions objecting to the pleading."). In her answer, Offord asserted that "this is a trespass to try title action" and demanded that Carson provide an abstract of title and proceed pursuant to Texas Rules of Civil Procedure 791 and 792. Even if this answer could be considered a challenge to the sufficiency of the pleadings, we observe that Offord failed to obtain a hearing or ruling on any purported pleading insufficiency. Failure to obtain a timely hearing and a ruling on special exceptions waives the exceptions and does not preserve them for appeal. *See Davis v. Angleton Indep. Sch. Dist.*, 582 S.W.3d 474, 481 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

"In the absence of special exceptions or other motion challenging the sufficiency of the pleadings, we construe a petition liberally in favor of the

pleader." *Brumley*, 616 S.W.3d at 831. Texas courts consider the substance and not the form of the pleadings to determine whether an action is properly considered as one for declaratory judgment, trespass to try title, or to quiet title. *Id.* at 831–33; *Martin v. Amerman*, 133 S.W.3d 262, 264, 268 (Tex. 2004); *Gutierrez v. Lorenz*, No. 14-18-00608-CV, 2020 WL 1951606, at *6 (Tex. App.—Houston [14th Dist.] Apr. 23, 2020, no pet.) (mem. op.).

The Supreme Court of Texas has recognized that "[t]he issue of whether a claimant must seek relief related to property interests through a trespass-to-try-title action, as opposed to a suit under the Declaratory Judgments Act, has been the source of some confusion in [that] Court and others." *Lance v. Robinson*, 543 S.W.3d 723, 735 (Tex. 2018). However, it has recently provided some clarification on various causes of action to settle questions related to title:

> By statute, a trespass-to-try-title action is the method of determining title to lands. Although related claims exist to determine narrower questions of possession, a cloud on a title, or a non-possessory interest, a trespass-to-try-title action is the exclusive remedy for resolving overarching claims to legal title. It embraces all character of litigation that affects the title to real estate. In a trespass-to-try-title action, a plaintiff may prove legal title by establishing: (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations (i.e., adverse possession); or (4) possession that has not been abandoned.

*Brumley*, 616 S.W.3d at 831–32 (internal quotations and citations omitted); *see* TEX. PROP. CODE § 22.001(a) ("A trespass to try title action is the method of

11

determining title to lands, tenements, or other real property."). A trespass-to-try-title action "is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner." *Martin*, 133 S.W.3d at 265. The Supreme Court of Texas has determined that a trespass-to-try-title action is the proper procedural vehicle "when the claimant is seeking to establish or obtain the *claimant's* ownership or possessory right in the land at issue." *Lance*, 543 S.W.3d at 736 (emphasis in original).

This court and others have recognized that "[t]he line segregating claims impacting title to property that can be brought as declaratory judgment actions from those claims impacting title that must be brought as trespass-to-try-title actions is not a clear one under current Texas law." *AIC Mgmt. Co. v. AT&T Mobility, LLC*, No. 01-16-00896-CV, 2018 WL 1189865, at *10 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (mem. op.); *Jinkins v. Jinkins*, 522 S.W.3d 771, 785–76 (Tex. App.—Houston [1st Dist.] 2017, no pet.). "The uncertainty originates with two legislative directives that appear to overlap to some degree." *AIC Mgmt.*, 2018 WL 1189865, at *10; *Jinkins*, 522 S.W.3d at 786. While Property Code section 22.001(a) mandates use of a trespass-to-try-title action to determine title to land, the DJA however, provides that "[a] person interested under a deed, will, written contract, or other writings . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a

declaration of rights, status, or other legal relations thereunder." *Jinkins*, 522 S.W.3d at 786 (quoting TEX. CIV. PRAC. & REM. CODE § 37.004(a)). "These statutes differ in their pleading and proof requirements, and only the DJA allows a successful party to recover attorney's fees." *Id.*

The Supreme Court of Texas and this Court have held that, "[i]f a dispute involves a claim of superior title and the determination of possessory interests in property, it must be brought as a trespass-to-try-title action." *Jinkins*, 522 S.W.3d at 786; *see Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 926 (Tex. 2013). "[A] litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Jinkins*, 522 S.W.3d at 786. Courts, including the Supreme Court of Texas and this Court, have recognized narrow circumstances in which a declaratory judgment action may be the appropriate vehicle to resolve disputes related to property but not directly involving questions of title. *See e.g.*, *Lance*, 543 S.W.3d at 734–36 (holding that declaratory judgment is available to resolve defendant's authority to obstruct claimant's access to disputed area, such as easement); *Sustainable Tex. Oyster Res. Mgmt., L.L.C. v. Hannah Reef, Inc.*, 623 S.W.3d 851, No. 01-18-00088-CV, 2020 WL 7502493, at *10 (Tex. App.—Houston [1st Dist.] Dec. 22, 2020, pet. filed) (concluding declaratory judgment was proper vehicle for voiding defendant's lease

13

and determining oystermen's right to access public fishing grounds); *Eggemeyer v. Hughes*, 621 S.W.3d 883, 893 (Tex. App.—El Paso 2021, no pet.) (citing Civil Practice and Remedies Code section 37.004(c) and recognizing that boundary disputes may be resolved through declaratory-judgment claim); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 448–49 (Tex. App.—Austin 2006, pet. denied) (finding no bar to availability of DJA attorney's fees in suit seeking adjudication of validity of creditor's deed of trust as it impacts his entitlement to proceeds from sale of property because there was only "indirect impact" on title).

Trespass-to-try-title and declaratory-judgment claims are not the only methods for determining rights to property. *See Brumley*, 616 S.W.3d at 831–32 (recognizing claim to remove cloud on title exists separately from trespass to try title claim). The supreme court recognized that, although "the term 'quiet title' has acquired a colloquial meaning encompassing many kinds of title disputes, including those more aptly named as trespass-to-try-title actions," a suit to quiet title is "traditionally one in which the superior title holder seeks to remove a challenge to that title." *Id.* at 835. Thus, "[t]he plaintiff in a quiet-title suit 'must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove.'" *Id.* (quoting *Lance*, 543 S.W.3d at 739). "A suit to clear title or quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property."

14

*Gutierrez*, 2020 WL 1951606, at \*6; *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

Offord argues that the essence of Carson's claim is a traditional trespass-to-try-title claim and, thus, that Carson's current declaratory-judgment action was improper. Offord mischaracterizes the relief that Carson sought. Carson's petition sought a declaration that the "Correction Deed" was invalid in order to remove a cloud on Carson's title to the Fulshear Lot. Carson's petition alleged that Offord had "clouded" Carson's title to the Fulshear Lot by asserting an interest in the property "based on a specious 'Correction Deed.'" Carson alleged that the Correction Deed was "invalid, subject to cancellation and should be adjudicated a nullity." She made the following request for relief:

> a. The [Correction Deed] and any related filings clouding [Carson's] title to the Fulshear Lot be declared cancelled, null and void and of no further force or effect;
>
> b. [Carson's] title to the real property be quieted against [Offord];
>
> c. [Carson] be adjudged the owner of the property and entitled to possession of the [Fulshear Lot];
>
> d. [Offord] be adjudged to hold no estate nor interest of any kind in or to the Fulshear Lot;
>
> e. Reasonable and necessary attorney's fees and costs of the suit, and
>
> f. Any other and further relief, in law or in equity, to which [Carson] is entitled.

15

Similarly, in her motion for summary judgment, Carson asserted that the 2010 Judgment and Deed "quiet[ed] title in the Estate of Winter Gordon." She asserted that there was no evidence of a sale or transfer to Offord, and she asserted that the Correction Deed, attempting to substitute Offord individually in place of Offord as the guardian of Winter Gordon's estate, was invalid as a matter of law. Carson asked the trial court to render summary judgment "cancelling" the Correction Deed, and Carson asserted that her summary-judgment evidence established that she was the owner of the Fulshear Lot and that Offord's Correction Deed was invalid.

Offord argues that the suit is a trespass-to-try-title suit. Considering the pleadings, Carson's suit is stated as a declaratory judgment action, but it is, in substance, a suit to quiet title rather than a trespass-to-try-title claim. Rather than seeking to clear a problem in the chain of title or to recover possession of land unlawfully withheld from her, *see Martin*, 133 S.W.3d at 265 (describing traditional purpose of trespass-to-try-title claims), Carson alleged that she was the superior title holder seeking to remove the cloud on her title created by the invalid Correction Deed. *See Brumley*, 616 S.W.3d at 835 (holding that suit to quiet title is "traditionally one in which the superior title holder seeks to remove a challenge to that title" and that quiet-title plaintiff must prove that she has right of ownership and that adverse claim is cloud on title that equity will remove). Her suit was based

on the invalidity of the Offord's claim to the property. *See Gutierrez*, 2020 WL 1951606, at *6 (describing basis of suit to quiet title); *Essex Crane Rental Corp.*, 371 S.W.3d at 388 (stating that suit to quiet title—also known as suit to remove cloud from title—relies on invalidity of defendant's claim to property). Carson did not seek to establish or obtain her own right to ownership of the Fulshear Lot—she contended that the previous court proceedings out lined above had already settled that issue. Carson alleged, instead, that as the rightful title holder, she was entitled to have the invalid Correction Deed removed as a cloud on her title. *See Lance*, 543 S.W.3d at 736 (stating that trespass-to-try-title claim was proper procedural vehicle "when the claimant is seeking to establish or obtain the *claimant's* ownership or possessory right in the land at issue"); *Essex Crane Rental Corp.*, 371 S.W.3d at 388 (stating that plaintiff in quiet-title claim must establish her superior equity and right to relief and must prove, as matter of law, that she has right of ownership and that defendant's adverse claim is cloud on title that equity will remove). Carson sought the declaration of her own ownership rights only as a result of the removal of the cloud on title created by the purported Correction Deed.

Considering the substance of Carson's pleadings, Offord's failure to file special exceptions or pursue a ruling on her allegations that Carson's pleadings were inadequate, we reject Offord's contention that the trial court should have

17

required Carson to proceed with a trespass-to-try-title suit pursuant to Texas Property Code chapter 22. We overrule this portion of Offord's first issue.

## A.     Validity of Correction Deed

In her second issue, Offord contends that the trial court erred in granting Carson's motion for summary judgment asserting that the Correction Deed was invalid. Carson argued in her motion for summary judgment that the Correction Deed purported to name a new grantee—Offord in her individual capacity as opposed to Offord as the guardian of Winter Gordon's Estate—and thus it attempted to make a material correction governed by Property Code section 5.029. Carson further asserted that, because the Correction Deed did not comply with the requirements of section 5.029, it is invalid. Offord argues, on the other hand, that correction of a name to avoid an ambiguity is an immaterial change under Property Code section 5.028.

The Property Code authorizes the correction of an ambiguity or error in a recorded original instrument of conveyance to transfer real property or an interest in real property. *See* TEX. PROP. CODE § 5.027; *Tanya L. McCabe Trust v. Ranger Energy LLC*, 531 S.W.3d 783, 794 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *AIC Mgmt. Co.*, 2018 WL 1189865, at *6. Section 5.028, governing "nonmaterial" corrections, provides in relevant part:

> (a) A person who has personal knowledge of facts relevant to the correction of a recorded original instrument of conveyance may

18

prepare or execute a correction instrument to make a nonmaterial change that results from a clerical error, including:

(1) a correction of an inaccurate or incorrect element in a legal description, such as a distance, angle, direction . . . ; or

(2) an addition, correction, or clarification of:

(A) a party's name, including the spelling of a name, a first or middle name or initial, a suffix, an alternate name by which a party is known, or a description of an entity as a corporation, company, or other type of organization;

(B) a party's marital status;

(C) the date on which the conveyance was executed;

(D) the recording data for an instrument referenced in the correction instrument; or

(E) a fact relating to the acknowledgment or authentication.

TEX. PROP. CODE § 5.028.

The Property Code also provides for material corrections. *See id.* § 5.029.

Section 5.029 provides:

(a) In addition to nonmaterial corrections, including the corrections described by Section 5.028, the parties to the original transaction or the parties' heirs, successors, or assigns, as applicable may execute a correction instrument to make a material correction to the recorded original instrument of conveyance, including a correction to:

(1) add:

(A) a buyer's disclaimer of an interest in the real property that is the subject of the original instrument of conveyance;

19

(B) a mortgagee's consent or subordination to a recorded document executed by the mortgagee or an heir, successor, or assign of the mortgagee; or

(C) land to a conveyance that correctly conveys other land;

(2) remove land from a conveyance that correctly conveys other land; or

(3) accurately identify a lot or unit number or letter of property owned by the grantor that was inaccurately identified as another lot or unit number or letter of property owned by the grantor in the recorded original instrument of conveyance.

*Id.* § 5.029(a). A correction instrument under section 5.029 must be:

(1) executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct or, if applicable, a party's heirs, successors, or assigns; and

(2) recorded in each county in which the original instrument of conveyance that is being corrected is recorded.

*Id.* § 5.029(b).

A correction instrument that complies with section 5.028 or 5.029 is:

(1) effective as of the effective date of the recorded original instrument of conveyance;

(2) prima facie evidence of the facts stated in the correction instrument;

(3) presumed to be true;

(4) subject to rebuttal; and

(5) notice to a subsequent buyer of the facts stated in the correction instrument.

*Id.* § 5.030(a). A correction instrument replaces and is a substitute for the original instrument. *See id.* § 5.030(b).

The Correction Deed here purports to correct the name of the grantee. Following the 2010 Judgment awarding title by adverse possession to "Diana G. Offord, as Guardian of the Estate of Incapacitated Person, Winter Gordon," the parties recorded a deed dated October 7, 2010, and referencing the 2010 Judgment. The 2010 Deed identified multiple grantors, including George D. Gordon and the other cross-defendants from the 2010 Judgment. The grantee on the 2010 Deed was identified as "Diana G. Offord AKA Diana Gordon Offord as Guardian of the Estate of Incapacitated Person, Winter Gordon, Jr., A.K.A. Winter Gordon, Sr."

Winter Gordon died in 2011. In 2016, while his estate was still being probated, Offord's attorney filed the Correction Deed naming "Diana Gordon Offord" as the new grantee. The Correction Deed itself identified the reason for correction:

> This is the correction deed, given and accepted to avoid a mutual mistake which INCORRECTLY NAMED DIANA GORDON OFFORD AS DIANA G. OFFORD AKA DIANA GORDON OFFORD AS GUARDIAN OF THE ESTATE OF INCAPACITATED PERSON, WINTER GORDON, JR AKA WINTER GORDON SR and is recorded in instrument number: 2010099315 of the Deed Records of Fort Bend County, Texas as such in substitution for such earlier deed dated on the 08th, October 2010 and it shall be effectual as of and retroactive to such date.

The 2016 Correction Deed, like the 2010 Deed, referenced the 2010 Judgment. The Correction Deed was executed only by Offord's attorney, Diogu Kalu Diogu II, and filed in the real property records.

Thus, the 2016 Correction Deed identified a new grantee, changing the identity of the grantee from Offord in her capacity as Winter Gordon's guardian to Offord in her individual capacity. Property awarded to "Diana G. Offord, as Guardian of the Estate of Incapacitated Person, Winter Gordon," cannot be construed as belonging to Offord individually. Rather, as guardian, Offord was entitled to "possess and manage all property belonging to the ward" and to "bring and defend suits by or against the ward." TEX. ESTATE CODE § 1151.101(a); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) ("Although a minor, incompetent, or estate may have suffered an injury and thus have a justiciable interest in the controversy, these parties lack the legal authority to sue; the law therefore grants another party the capacity to sue on their behalf.").

Thus, the change here—changing the grantee from Offord in her capacity as Guardian of the Estate of Winter Gordon to Offord individually—is not correcting a "clerical error" or making a correction or clarification of a party name; rather, it is seeking to name a completely distinct legal entity as grantee. *See* TEX. PROP. CODE § 5.028(a)(2)(A) (identifying nonmaterial, clerical corrections as including "an addition, correction, or clarification of . . . a party's name, including the

22

spelling of a name, a first or middle name or initial, a suffix, an alternate name by which a party is known, or a description of an entity as a corporation, company, or other type of organization"); *AIC Mgmt. Co.*, 2018 WL 1189865, at *7 (holding that substitution of "an entirely different party as grantee" was not clerical error that could be corrected under section 5.028).

In *AIC Management Co.*, this Court addressed whether a change in grantee may be considered a "material" correction. 2018 WL 1189865, at *7. We observed that, although section 5.029 "does not expressly contemplate a change in grantee to be a 'material' correction within the statute, the statute employs, before its enumerated list [of material corrections], the term 'including.'" *Id.* (citing TEX. PROP. CODE § 5.029). Generally, "'[i]ncludes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." TEX. GOV'T CODE § 311.005(13); *AIC Mgmt. Co.*, 2018 WL 1189865, at *7. We thus concluded that a correction seeking to change the identity of the grantee was a material correction that required each party to the recorded original instrument to execute the correction deed. *AIC Mgmt. Co.*, 2018 WL 1189865, at *7, 9.

Here, as in *AIC Management Co.*, the attempt to change the grantee from Offord as the Guardian of the Estate of Winter Gordon to Offord individually is a material change falling under section 5.029. Furthermore, the 2016 Correction

23

Deed was executed only by Offord's attorney, so it did not comply with the requirements of section 5.029 that the correction deed be executed by each party—or if applicable, the parties' heirs, successors, or assigns—to the original deed. *See* TEX. PROP. CODE § 5.029(b). Because the Correction Deed does not comply with the statutory requirements set out in section 5.029, it is not valid. *See id.*; *Tanya L. McCabe Trust*, 531 S.W.3d at 798 (holding that requirement that each party to recorded original instrument execute correction deed is essential to fulfilling Legislature's standard for permitting material correction).

We conclude that Carson established her right, as a matter of law, to have the Correction Deed declared invalid and removed as a cloud on the title to the Fulshear Lot.

**B.    Carson's Title to the Fulshear Lot**

As part of her complaint at trial and on appeal, Offord further contests the trial court's finding that Carson "owns the property in fee simple absolute, and Defendant Diana Gordon Offord . . . [is] barred from asserting any right, title or interest in or to the property . . . as a result of the [Correction Deed]."

Carson argued in her motion for summary judgment that there was "no evidence that Defendant Offord ever acquired title to the Fulshear Lot." Indeed, Carson presented summary-judgment evidence supporting her contention that the Fulshear Lot passed from the Estate of Winter Gordon through his will to Carson.

24

Offord argues,[4] however, that the Fulshear Lot never belonged to the Estate of Winter Gordon. She asserts that it was "undisputed from the record" that the owner of the property at the time Offord became Winter Gordon's guardian was George Gordon and that Winter Gordon's will could not have transferred the property to Carson. Offord's assertions disregard the nature of her role as guardian of Winter Gordon's estate prior to his death in 2011, and it ignores the effect of the 2010 Judgment and the rulings of the probate court in resolving Winter Gordon's estate following his death.

Offord was named guardian of Winter Gordon's Estate in 2008. In 2009, the Fulshear Lot was involved in a lawsuit filed by various taxing entities, including Fort Bend County. The trial court rendered a final judgment in that case in 2010, identifying "Diana G. Gordon, As Guardian of the Estate of Incapacitated Person, Winter Gordon ("Offord")" as a defendant in the tax suit and a cross-complainant in the related "action to quiet title." The 2010 Judgment included findings that "Offord" had established the right to title of the Fulshear Lot through adverse possession. Thus, the 2010 Judgment ordered that "Offord acquired title by peaceable and adverse possession."

By identifying "Offord" as meaning "Diana G. Offord, As Guardian of the Estate of Incapacitated Person, Winter Gordon," the 2010 Judgment thus awarded

---

[4] This is from her reply brief, which clarified the arguments made in her opening appellant's brief.

the Fulshear Property to the Estate of Winter Gordon. Offord was named as his guardian, not in her individual capacity, because Gordon as an incapacitated person lacked the capacity to sue or be sued. *See Austin Nursing Ctr.*, 171 S.W.3d at 849. As Winter Gordon's guardian, Offord did not personally take title to the Fulshear Lot; rather, she was entitled to "possess and manage all property belonging to the ward." *See* TEX. ESTATE CODE § 1151.101(a)(1); *see also id.* § 1151.003 (providing that guardian "may not dispute the right of the ward to any property that came into the guardian's possession as guardian of the ward" except in certain circumstances not applicable here); *id.* § 1151.151(a) ("The guardian of the estate shall take care of and manage the estate as a prudent person would manage the person's own property. . . .").

Carson asserted in her motion for summary judgment that Offord could not present any evidence that the Fulshear Lot had been granted to Offord individually. The only evidence Offord provided with her response to the motion for summary judgment was her own affidavit, in which she stated that she participated in her individual capacity in the proceedings that resulted in 2010 Judgment, that the court in the 2010 Judgment had awarded the property to her in her individual capacity, and that her attorney had mistakenly "filed a deed for me as Guardian of Winter Gordon Sr." This self-serving affidavit, which contradicts recitations and orders in the 2010 Judgment, is not sufficient summary-judgment evidence to raise

26

a fact issue regarding the effect of the 2010 Judgment. *See Lujan*, 555 S.W.3d at 88–90 (discussing "sham affidavit rule" and holding that, under specific facts of that case, trial court did not err in considering tax documents as equivalent of sworn statements and disregarding affidavit that contradicted that sworn evidence).

In addition to the 2010 Judgment awarding title to the Fulshear Lot to Winter Gordon's estate, Carson provided copies of Winter Gordon's will naming her as his sole heir. Carson further provided records from the probate proceeding, demonstrating that the Fulshear Lot was listed in the inventory approved by the probate court. And she presented the deed from the estate's executor granting the property to Carson as Winter Gordon's sole heir. Offord, again, provided only her conclusory affidavit testimony that the inventory was "bogus" and that "[i]t is clear that the [Fulshear Lot] should not be a part of the will." Thus, the record evidence conclusively established that the Fulshear Lot passed from Winter Gordon's estate to his heir, Carson. As stated above, the evidence likewise established that the 2016 Correction Deed was not valid. The trial court correctly rendered its final judgment based on the finding that the Correction Deed was invalid, ordering that the Correction Deed "is null and void and cancelled of record" and that Carson "owns the property in fee simple absolute, and Defendant [Offord] and all other persons claiming under [Offord] are barred from asserting any right . . . to [the Fulshear Lot] as a result of the [Correction Deed]."

We overrule Offord's second issue.

## C.    Attorney's Fees

Related to her first issue, Offord argues that because Carson's suit could not be brought under the DJA, that statute's provision allowing attorney's fees was unavailable to Carson. As set out above, we concluded that, although Carson pled her suit as a declaratory judgment, it was in substance a suit to quiet title. Attorney's fees are not available in quiet title disputes. *Gutierrez*, 2020 WL 1951606, at *6; *Starbranch v. Crowell*, No. 01-15-00429-CV, 2016 WL 796836, at *2 (Tex. App.—Houston [1st Dist.] Mar. 1, 2016, no pet.) (mem. op.).

The DJA does permit the recovery of attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE § 37.009. However, a declaratory judgment action cannot be used solely to obtain attorney's fees. *Starbranch*, 2016 WL 796836, at *2 ("Attorney's fees are not available in a suit to quiet title or remove cloud from title, and . . . a declaratory judgment action may not be used solely to obtain attorney's fees that are not otherwise authorized by statute."); *DAS Inv. Corp. v. Nowak*, No. 01-03-00140-CV, 2004 WL 396983, at *2–3 (Tex. App.—Houston [1st Dist.] Mar. 4, 2004, no pet.) (mem. op.) (holding that defendants could not recover attorney's fees under DJA because their counterclaim, which alleged that liens were unenforceable and prevented defendants from having good and marketable title, was essentially claim to quiet title). Here any declaration sought by Carson or

28

made by the trial court was to resolve the quiet-title dispute. We conclude that the award of attorney's fees was improper.

Accordingly, we modify the judgment of the trial court to delete the award of attorney's fees.

## Conclusion

We modify the judgment to delete the award of attorney's fees and affirm the judgment as modified.


Richard Hightower
Justice

Panel consists of Justices Kelly, Landau, and Hightower.